UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.   1:06-cr-00076 |
| | ) | |
| Plaintiff, | ) | MOTION TO AMEND INDICTMENT |
| | ) | |
| v. | ) | |
| | ) | |
| CHIAN SPIRIT MARITIME | ) | |
| ENTERPRISES, INC., | ) | |
| VENETICO MARINE S/A | ) | Count 1:   Conspiracy – 18 U.S.C. § 371 |
| IRENE E/M, Evangelos MADIAS, | ) | Count 2:   False Oil Record Book – |
| Christos PAGONES,  Adrien | ) | 33 U.S.C. § 1908(a) |
| DRAGOMIR | ) | Count 3,4,5: Witness Tampering - 18 |
| | ) | U.S.C. § 1512 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION TO AMEND INDICTMENT

NOW COMES the United States of America, by and through its counsel, Mark Kotila, Senior Trial Attorney, and Jeffrey Phillips, Trial Attorney, United States Department of Justice, Environmental Crimes Section, and moves this Honorable Court to Amend the Indictment in the above-captioned matter and as reasons and in support thereof states the following:

1. That the Indictment in the above-captioned matter including Defendant, Adrien Dragomir, spelled Defendant Dragomir's last name phonetically as "Dragomere;"

2. That the United States has acknowledged that this is an incorrect spelling of this Defendant's last name;

3. That the correct spelling of this Defendant's last name should read "Dragomir." See attached Amended Indictment as Exhibit 1;

WHEREFORE, the United States of America, by and through counsel, respectfully moves this Honorable Court to Amend the Indictment in the above-captioned matter to reflect the correct spelling of Defendant Adrien Dragomir's last name.

                Respectfully submitted,

                SUE ELLEN WOOLDRIDGE

                Assistant Attorney General

          By: _____
              Mark Kotila, Esq.
              Senior Trial Attorney
              Environmental Crimes Section
              Department of Justice
              P.O. Box 878, Ben Franklin Station
              Washington, D.C. 20004
              (202) 305-0381


              _____
              Jeffrey Phillips, Esq.
              Trial Attorney
              Environmental Crimes Section
              Department of Justice
              P.O. Box 878, Ben Franklin Station
              Washington, D.C. 20004
              (202) 305-0354

## Certificate of Service

I hereby certify that on July 17, 2006, copies of the foregoing was made by personal service to:

George Chalos, Esq., Fowler, Rodriguez & Chalos, 366 Main Street, Port Washington, New York 11050; Carl Woodward, Esq., Five Becker Farm Road, Roseland, NJ 07068.

              _____
              Jeffrey Phillips, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.   1:06-cr-00076 |
| | ) | |
| Plaintiff, | ) | MOTION TO AMEND INDICTMENT |
| | ) | |
| v. | ) | |
| | ) | |
| CHIAN SPIRIT MARITIME ENTERPRISES, INC., | ) ) | |
| VENETICO MARINE S/A | ) | Count 1:   Conspiracy – 18 U.S.C. § 371 |
| IRENE E/M, Evangelos MADIAS, | ) | Count 2:   False Oil Record Book – |
| Christos PAGONES,  Adrien | ) |    33 U.S.C. § 1908(a) |
| DRAGOMIR | ) | Count 3,4,5: Witness Tampering - 18 |
| | ) |    U.S.C. § 1512 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER**

A Motion having been made by the United States of America to Amend the Indictment in the above-captioned matter to reflect the correct spelling of defendant Adrien Dragomir's last name, and the Court having been satisfied in the premises, it is hereby

ORDERED this _____ day of _____, 2006, that the Indictment be Amended so as to reflect the change in the correct spelling of the name of Defendant Adrien Dragomir as set forth in the attached Amended Indictment.

_____
HONORABLE GREGORY M. SLEET
United States District Court
District of Delaware

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.   1:06-cr-00076 |
| | ) | |
| Plaintiff, | ) | INDICTMENT |
| | ) | (Felony) |
| v. | ) | |
| | ) | |
| CHIAN SPIRIT MARITIME | ) | |
| ENTERPRISES, INC., | ) | |
| VENETICO MARINE S/A | ) | Count 1:   Conspiracy – 18 U.S.C. § 371 |
| IRENE E/M, Evangelos MADIAS, | ) | Count 2:   False Oil Record Book – |
| Christos PAGONES,  Adrien | ) | 33 U.S.C. § 1908(a) |
| DRAGOMIR | ) | Count 3,4,5: Witness Tampering - 18 |
| | ) | U.S.C. § 1512 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Grand Jury Charges That:

## COUNT 1
**(Conspiracy)**

At all times relevant to this Indictment:

**A.     The Participants and the Process**

1.     CHIAN SPIRIT MARITIME ENTERPRISES, INC., operated and managed a fleet of four large vessels, including the tanker vessel IRENE E/M (hereinafter, "Irene") and was headquartered in Greece. VENETICO MARINE was a foreign company also headquartered in Greece, which had corporate control of the Irene, owned by defendant EVANGELOS MADIAS ("MADIAS") and flagged by Saint Vincent and the Grenadines.  The Irene was a 21,947 ton tanker vessel which carried bulk products such as salt and sugar.  During the period from on or

about May 1, 2005, through December 6, 2005, the Irene made voyage from ports in Europe and Africa, through Brazil to ports inside the United States, including Big Stone Anchorage, Delaware Bay, Delaware.

2.      During the entire year of 2005, MADIAS was responsible for the management and fiscal outlays to support Irene's ongoing ocean shipping enterprise.

3.      KRISTOS PAGONES ("PAGONES") was a technical supervisor and representative for CHIAN SPIRIT MARITIME ENTERPRISES, I NC. who boarded the Irene upon its anchorage in the Delaware Bay on or about December 5, 2005.

4.      ADRIAN DRAGOMIR ("DRAGOMIR") was a licensed First Engineer.  From on or about October 2, 2005, through December 2005, DRAGOMIR was the First or "Chief" Engineer on the Irene, and at all times was responsible for managing and supervising the engine department, including subordinate engine department crew members, the Second Engineer, Third Engineer, Fourth Engineer, Oilers, Fitter, and Wiper.  DRAGOMIR, was also responsible for entries made into the Oily Record Book regarding the movement and any discharge overboard of oily bilge water.

5.      The operation of large marine vessels or container ships like the Irene generated large quantities of oily waste water and oily sludge.  Oily sludge was generated during the process of purifying fuel oil, lubricating oil, and other petroleum products so that these products can be used in the engines on board the vessel.   Engine department operations generate large quantities of oil-contaminated bilge waste created when water mixes in the bottom of the vessel, known as the bilges, with oil leaked and dripped from the engines' lubrication and fuel systems. The oil-contaminated bilge waste is collected, stored, and processed to separate the water from

the oil and other wastes using a pollution prevention control device known as an Oil Water Separator and oil-sensing device known as an Oil Content Meter. The Oil Content Meter is designed to evaluate the oil content in a sample of the effluent after passing through the Oil Water Separator. If the Oil Content Meter determines that the oil content of the effluent exceeds fifteen (15) parts per million ("ppm"), then it will sound an audio and visual alarm and a solenoid three-way valve will be triggered to redirect the effluent to a storage tank aboard the vessel. If the Oil Content Meter determines that the oil content in the effluent is less than 15 ppm, then it may be discharged overboard.

**B.     The Regulatory Program**

6.      The United States is part of an international treaty, the International Convention for the Prevention of Pollution from Ships, 1973, as modified by the Protocol of 1978 or the MARPOL Protocol (hereinafter "MARPOL") that sets forth the international standards for the maximum concentration of oil permitted to be discharged overboard from vessels. This standard is 15 parts per million (hereinafter "ppm") of oil. MARPOL Annex I, Reg. 9. MARPOL required vessels to have and maintain an oil sensing device, such as that which would be found on an Oil Water Separator, to prevent the discharge of a mixture containing more than 15 ppm of oil. MARPOL Annex I, Reg 16. When such a sensor detected more than 15 ppm of oil, it redirected that effluent to a storage tank on board a vessel. The purpose of an Oil Water Separator was to treat oily waste water by separating the oil from the water.

7.      MARPOL was implemented in the United States by the Act to Prevent Pollution from Ships (hereinafter "APPS"), 33 U.S.C. §§ 1901 et seq. The regulations promulgated under the authority of APPS applied to all non-military vessels, including vessels operating under the

authority of a country other than the United States, when these vessels are operating in United States waters or while at a port or terminal under the jurisdiction of the United States. 33 C.F.R. § 151.09.

8.  Consistent with the requirements contained in MARPOL, these APPS regulations required that each tanker vessel of more than 150 gross tons maintain a record known as an Oil Record Book. In this Oil Record Book, transfers of oil, the disposal of sludge and waste oil, discharges of water from slop tanks, and overboard discharges of bilge water that have accumulated in machinery spaces, and thus are contaminated with oil, must be fully and accurately recorded by the person in charge of the operations. 33 C.F.R. § 151.25(d). The Oil Record Book must also record any emergency, accidental, or other exceptional discharges of oil or mixtures. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained on board the vessel for not less than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25(k).

9.  The United States Coast Guard was charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 89(a) to board vessels and conduct inspections and investigations of potential violations. The United States Coast Guard was authorized to examine the vessel's Oil Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment and appropriate procedures, whether it poses any danger to United States ports and waters, and whether the vessel has discharged any oil or oily mixtures in violation of MARPOL, APPS, or any applicable federal regulations. 33 C.F.R. §§ 151.23(a)(3) and (c). If the United States Coast Guard found evidence that a vessel is not in substantial compliance with MARPOL or APPS, the United States Coast Guard was empowered to deny a

vessel's entry to a United States Port or detain a vessel until it determines that the vessel does not present an unreasonable threat to the marine environment. 33 C.F.R. §§ 151.07(b) and 151.25(b). As First Engineer of the <u>Irene</u>, DRAGOMIR was responsible for assuring that the <u>Irene</u> operated in compliance with MARPOL and APPS.

**C.    The Conspiracy**

10.    On an unknown date, but including at least on or about October 3, 2005, and continuing through on or about December 10, 2005, within the District of Delaware and elsewhere, the defendants, CHIAN SPIRIT MARITIME ENTERPRISES, INC., VENETICO MARINE, S/A, MADIAS, PAGONES, and DRAGOMIR together with subordinate officers and engine department crew members of the <u>Irene</u>, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree:

> a) to knowingly fail to maintain an Oil Record Book on the <u>Irene</u> in which all operations, including the transfer of oil-contaminated bilge waste and oily sludge, were fully recorded in violation of the Act to Prevent Pollution from Ships, in violation of Title 33, United States Code, Section 1908(a) and title 33 Code of Federal Regulations, Sections 151.25(a) and 151.25(h);

> b) to knowingly and willfully make and use and cause the making and use of materially false writings and documents, in a matter within the jurisdiction of the United States Coast Guard and Department of Homeland Security, to make available for presentation a false Oil Record Book for the <u>Irene</u> which failed to record the overboard discharge of oil contaminated bilge waste; and further

> c) to corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security during a vessel inspection of the <u>Irene</u> to determine the vessel's compliance with MARPOL and United States law, in violation of Title 18, United States Code, Section 1505.

**D.     The Manner and Means of the Conspiracy**

Among the means that the defendants, CHIAN SPIRIT MARITIME ENTERPRISES, INC., VENETICO MARINE S/A, MADIAS, PAGONES, and DRAGOMIR together with their co-conspirators, both known and unknown to the Grand Jury, used to execute this conspiracy and to further its objectives were the following:

11. It was a part of the conspiracy that DRAGOMIR discharged and caused the discharge of untreated oily sludge, and unprocessed bilge water directly into the ocean from the <u>Irene</u> and failed to record or cause the recording of these discharges in the vessel's Oil Record Book.

12. It was a further part of the conspiracy that DRAGOMIR directed the vessel electrician to fix the alarm for the inoperable oily water separator (OWS), in an attempt to pass port inspection of the OWS. DRAGOMIR ordered through lower-level engineers discharges overboard using a "bypass" or "magic pipe" while the <u>Irene</u> was underway.

13. It was a further part of the conspiracy that, in the Port of Big Stone Anchorage, Delaware Bay, Delaware, CHIAN SPIRIT MARITIME ENTERPRISES, INC., VENETICO MARINE S/A, and DRAGOMIR and their co-conspirators maintained, used, and presented and

caused to be presented for inspection, or made available for inspection, to the United States Coast Guard, a false Oil Record Book which contained material omissions for the purpose of concealing from the United States Coast Guard and other port state control authorities that the Irene was discharging untreated oily sludge waste directly overboard into the ocean and to create the false impression that the crew of the Irene was properly handling oily sludge. Defendant DRAGOMIR maintained a false and misleading Oil Record Book for the Irene.

14. It was a further part of the conspiracy that, in the Port of Big Stone Anchorage, Delaware Bay, Delaware, CHIAN SPIRIT MARITIME ENTERPRISES, INC., VENETICO MARINE S/A, and DRAGOMIR and their co-conspirators maintained, used, and presented and caused to be presented for inspection, or made available for inspection, to the United States Coast Guard, a false Oil Record Book which contained affirmative false entries for the purpose of concealing from the United States Coast Guard and other port state control authorities that the Irene was discharging water treated by the Oily Water Separator (OWS) into the ocean and to create the false impression that the crew of the Irene was properly handling oily sludge. Defendant DRAGOMIR maintained a false and misleading Oil Record Book for the Irene.

15. It was further part of the conspiracy that CHIAN MARITIME ENTERPRISES, INC., VENETICO MARINE S/A, MADIAS, PAGONES, and DRAGOMIR directed and encouraged members of the crew of the Irene to lie to members of the United States Coast Guard about the dumping of oily sludge and oil-contaminated bilge water from the Irene into the sea and/or conceal material facts about the system used to perform overboard discharges of oily sludge and bilge water.

E.    Overt Acts

In furtherance of this conspiracy and to effect the objects thereof, CHIAN MARITIME ENTERPRISES, INC., VENETICO MARINE S/A, MADIAS, PAGONES, and DRAGOMIR, subordinate engine department crew members, and other co-conspirators, both known and unknown to the Grand Jury, within the District of Delaware and elsewhere, committed or caused to be committed, at least one of the following overt acts:

16. During the voyage that took place on or about November 11, 2005, lower level engineers and other engine-room crew members connected flanges and a flexible pipe between the bilge tank and the ship's outside hull to bypass the Oily Water Separator. A pump was then used to pull untreated oily sludge and bilge wastes from the vessel's bilge waste tank, and discharge untreated oily sludge and bilge wastes directly into the ocean. These discharges were not recorded in the Oil Record Book.

17. During the voyages that took place between on or about November 21, 2005 and December 4, 2005, the Irene crew, utilizing a flexible hose attached between the bilge tank and a valve to the outside of the vessel, discharged water contaminated with oil from the Irene oily bilge tank directly into the ocean. These discharges were not recorded in the Oil Record Book.

18. During Irene's voyage from multiple ports in Africa to Brazil and from Brazil to the United States in October and November, 2005, DRAGOMIR ordered lower level engineers and crew members of the Irene to discharge oily water and oil sludge from the bilges directly into the ocean approximately 4 times per week. These discharges were not recorded in the Oil Record Book.

19. Between on or about October 3, 2005, and December 5, 2005, DRAGOMIR

knowingly maintained an Oil Record Book on the Irene which did not contain entries for the discharge of untreated oily sludge and bilge wastes into the ocean.

20. On or about December 3, 2005, DRAGOMIR told Irene engineers that on a previous occasion, the flanges used for the "magic pipe" had been discovered and he was afraid the United States authorities would find them, so he ordered the engineers to hide the flanges outside of the engine room. The Irene engineers then hid the flanges in the crew laundry room.

21. On or about December 5, 2005, while in the Port Big Stone Anchorage, Delaware Bay, Delaware, DRAGOMIR maintained a false Oil Record Book on board the vessel and made the Oil Record Book available for inspection by United States Coast Guard officials.

22. Between on or about October 3, 2005, and December 5, 2005, DRAGOMIR, Chief Engineer of the Irene, refused requests by Irene's electrician for parts necessary to repair the inoperable Oily Water Separator ("OWS"), and from on or about October 3, 2005 through on or about December 5, 2005 did maintain his signature in the Oil Record Book (ORB) to knowingly and falsely omit that oily waste was discharged into the ocean.

23. On or about December 5, 2005, the Chief Engineer, DRAGOMIR, caused to be presented to United States Coast Guard investigators a False Oil Record Book. The Oil Record Book did not contain entries for the overboard discharges of unprocessed oily sludge and bilge waste into the ocean using the bypass pipe when it was presented to the United States Coast Guard.

24. On or about December 5, 2005, MADIAS and PAGONES boarded the vessel.

25. On or about December 5, 2005, MADIAS, PAGONES, and MANOLACHE met in the Master's office.

26.     On or about December 5, 2005, MADIAS and PAGONES, summoned the 2nd Engineer to the Captain's office, after the crew had provided written statements to USCG investigators alleging, among other acts of misconduct, that the <u>Irene's</u> OWS did not work and that the sludge and oil-contaminated bilge water had been discharged into the ocean. MADIAS told the crew member "we can't do anything today because you made the statement."

27.     On or about December 6, 2005, at a subsequent meeting in which PAGONES met with several crew members, PAGONES threatened the crew to change their statements to United States Coast Guard investigators or they would go to jail. PAGONES directed the crew to lie, and that they could change and reverse their original statements.

28.     On or about December 6, 2005, MADIAS continued to repeatedly approach the 2nd Engineer to influence him to change the crew's original statements to the United States Coast Guard investigators, and during one of those meetings in the vessel's mess room, both MADIAS and PAGONES threatened the 2nd Engineer that he'd "go to jail" if the crew did not change their statements. MADIAS then told the 2nd Engineer that he should change his statement to say that he "didn't pump out" oily waste into the ocean and that he "felt pressured" by the United States Coast Guard investigators to make his original statement.

29.     All in violation of Title 18, United States Code, Section 371.

## COUNT 2

**(Act to Prevent Pollution from Ships - False Oil Record Book)**

30.     All of the allegations contained in paragraphs 1 through 30 of Count 1 are incorporated herein by reference, as if fully set forth.

31.     On or about December 5, 2005, in the District of Delaware, the defendants,

CHIAN SPIRIT MARITIME ENTERPRISE, INC., VENETICO MARINE S/A, and DRAGOMIR did knowingly fail to maintain an Oil Record Book for the <u>Irene</u> in which all unprocessed overboard discharges of oily sludge and bilge wastes from the <u>Irene</u> were required to be fully recorded.

32. All in violation of Title 33, United State Code, Section 1908(a), Title 18, United States Code, Section 2, and Title 33, Code of Federal Regulations, Section 151.25.

## COUNT 3

**(Witness Tampering)**

33. All of the allegations contained in paragraphs 1-30 and 33 of Counts 1-2 are incorporated herein by reference, as is fully set forth.

34. On or about December 6, 2005, in the District of Delaware, the defendants, CHIAN SPIRIT MARITIME ENTERPRISE, INC., VENETICO MARINE, SA, and PAGONES, knowing the United States Coast Guard was aboard and investigating the vessel <u>Irene</u>, corruptly persuaded and attempted to corruptly persuade another person with the intent to influence the testimony of that person in an official proceeding, in that the defendants told several members of the crew to change their statements to United States Coast Guard investigators or they would go to jail; that the crew should lie and change and/or reverse their original statements to United States Coast Guard investigators.

35. All in violation of Title 18, United States Code, Section 1512(b)(1).

## COUNT 4

**(Witness Tampering)**

11

36. All of the allegations contained in paragraphs 1-30, 33 and 36 of Counts 1-3 are incorporated herein by reference, as is fully set forth.

37. From on or about December 6, 2005, through on or about December 10, 2005, in the District of Delaware, the defendants, CHIAN SPIRIT MARITIME ENTERPRISE, INC., VENETICO MARINE S/A, and MADIAS, knowing the United States Coast Guard was aboard and investigating the vessel <u>Irene</u>, corruptly persuaded and attempted to corruptly persuade another person with the intent to influence the testimony of that person in an official proceeding, in that the defendants told the 2nd Engineer to change the crew's original statements to United States Coast Guard investigators or they would go to jail; that the crew should lie and say they "didn't dump oil overboard", and further, suggested that if asked by the United States Coast Guard why they were changing their original statements, to lie and explain that the crew "felt pressured" by United States Coast Guard investigators.

38. All in violation of Title 18, United States Code, Section 1512(b)(1).

## COUNT 5

### (Witness Tampering)

39. All of the allegations contained in paragraphs 1-30, 33, 36 and 39 of Counts 1-4 are incorporated herein by reference, as is fully set forth.

40. On or about December 1, 2005, when approaching the District of Delaware, the defendants, CHIAN SPIRIT MARITIME ENTERPRISE, INC., VENETICO MARINE S/A, and DRAGOMIR, knowing the United States Coast Guard would board and investigate the vessel <u>Irene</u>, corruptly persuaded and induced another person to conceal an object with intent to impair the object's integrity or availability for use in an official proceeding by telling a lower engine

room crew member of the <u>Irene</u> to hide the flanges and bypass pipe, which was used to illegally discharge oily waste directly overboard, outside of the engine room. On or about December 9, 2005, while anchored in the Delaware Bay, Delaware, the defendants continued to conceal the flanges and bypass pipe during the United States Coast Guard investigation.

    41. All in violation of Title 18, United States Code, Section 1512(b)(2)(B).

A TRUE BILL:

DATED:

_____

FOREPERSON

_____

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

_____

MARK W. KOTILA
Senior Trial Attorney
Environmental Crimes Section
United States Department of Justice

_____

JEFFREY L. PHILLIPS
Trial Attorney
Environmental Crimes Section
United States Department of Justice

13